FILED

2018 Oct-22  PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ENERGEN CORPORATION, JONATHAN Z. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| COHEN, KENNETH W. DEWEY, M. JAMES | : **SECURITIES EXCHANGE ACT OF** |
| GORRIE, JAY GRINNEY, WILLIAM G. | : **1934** |
| HARGETT, FRANCES POWELL HAWES, | : |
| VINCENT J. INTRIERI, ALAN A. KLEIER, | : **JURY TRIAL DEMANDED** |
| LORI A. LANCASTER, JAMES T. | : |
| MCMANUS, II, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

1.      This is an action brought by Plaintiff against Energen Corporation ("Energen or

the "Company"), the members Energen's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of

Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed acquisition of Energen by Diamondback Energy, Inc.

("Diamondback").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on September 13, 2018 (first amended on October 11, 2018, and again on October 18, 2018) with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sidewinder Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Diamondback, will merge with and into Energen (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Energen common share issued and outstanding will be converted into the right to receive 0.6442 of a share of Diamondback common stock, representing an implied value to each Energen shareholder of $84.95 per share based on the closing price of Diamondback common stock on August 13, 2018 (the "Merger Consideration").

3.      As discussed below, the consideration Energen stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company.  Defendants have now asked Energen's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed

Transaction.   The financial projections were also utilized by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") and Tudor, Pickering, Holt & Co. ("Tudor" and collectively with J.P. Morgan, the "Financial Advisors"), in conducting the valuation analyses in support of the fairness opinion. The Registration Statement also omits or misrepresents information regarding background of the Proposed Transaction.

4.       It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.       For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Energen's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.       Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Energen in incorporated in this District.

3

**PARTIES**

9.     Plaintiff is, and has been at all relevant times, the owner of Energen common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Jonathan Z. Cohen ("Cohen") has served as a member of the Board since 2018.

11.     Individual Defendant Kenneth W. Dewey ("Dewey") has served as a member of the Board since 2007.

12.     Individual Defendant M. James Gorrie ("Gorrie") has served as a member of the Board since 2014.

13.     Individual Defendant Jay Grinney ("Grinney") has served as a member of the Board since 2012.

14.     Individual Defendant William G. Hargett ("Hargett") has served as a member of the Board since 2015.

15.     Individual Defendant Frances Powell Hawes ("Hawes") has served as a member of the Board since 2013.

16.     Individual Defendant Vincent J. Intrieri ("Intrieri") has served as a member of the Board since 2018.

17.     Individual Defendant Alan A. Kleier ("Kleier") has served as a member of the Board since 2015.

18.      Individual Defendant Lori A. Lancaster ("Lancaster") has served as a member of the Board since 2017.

19.     Individual Defendant James T. McManus, II ("McManus") is the Company's Chairman, President, and Chief Executive Officer ("CEO"), and has been the CEO since July

2007, and Chairman since January 2008.  McManus became the Company's President and Chief Operating Officer in 1997.

20.     Defendant Energen is incorporated in Alabama and maintains its principal offices at 605 Richard Arrington Jr. Blvd. North, Birmingham, Alabama 35203-2707.  The Company's common stock trades on the New York Stock Exchange under the symbol "EGN."

21.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction Undervalues Energen

22.     Energen, incorporated on October 26, 1978, is an oil and natural gas exploration and production company. The Company is engaged in the exploration, development and production of oil and natural gas properties, and natural gas. The Company's operations are conducted through subsidiary, Energen Resources Corporation (Energen Resources) and occur within the Midland Basin, the Delaware Basin and the Central Basin Platform areas of the Permian Basin in west Texas and New Mexico. The Company is focused on increasing its oil, natural gas liquids and natural gas production and proved reserves through active development and/or exploratory programs in the Permian Basin.

23.     On August 14, 2018, the Company and Diamond jointly announced the Proposed Transaction:

> MIDLAND, Texas--(BUSINESS WIRE)--Aug. 14, 2018-- Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and Energen Corporation (NYSE: EGN) or ("Energen"), today announced that they have entered into a definitive agreement under which Diamondback will acquire Energen in an all-stock transaction valued at approximately $9.2 billion, including Energen's net debt of $830 million as of June 30, 2018. The consideration will consist of 0.6442 shares of Diamondback common stock for each share of Energen common

stock, representing an implied value to each Energen shareholder of $84.95 per share based on the closing price of Diamondback common stock on August 13, 2018. The transaction was unanimously approved by the Board of Directors of each company.

\* \* \*

TRANSACTION DETAILS

Under the terms of the definitive merger agreement, shareholders of Energen will receive 0.6442 shares of Diamondback common stock in exchange for each share of Energen common stock, representing an implied value to each Energen shareholder of $84.95 per share based on the closing price of Diamondback common stock on August 13, 2018. The consideration represents an approximately 19% premium to Energen's closing price of $71.36 on August 13, 2018. Upon closing the transaction, Diamondback shareholders will own approximately 62% of the combined company, and Energen shareholders will own approximately 38%. The resulting capital structure is consistent with Diamondback's strategy of maintaining a conservative financial profile and will accelerate the Company's path to an investment grade credit rating profile.

The transaction, which is expected to be completed by the end of the fourth quarter of 2018, is subject to the approval of both Diamondback and Energen shareholders, the satisfaction of certain regulatory approvals and other customary closing conditions.

Upon closing, Diamondback's Board of Directors and executive team will remain unchanged. Additionally, the Company will continue to be headquartered in Midland, Texas.

24.     The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth.  More specifically, just a week before the announcement of the Proposed Transaction, Energen reported that production in the second quarter of 2018 exceeded guidance midpoint by 7%, a 5% increase from the previous quarter. Fiscal year 2018 production is estimated to increase 32% year over year at guidance midpoint.

25.     McManus commented,

In the second quarter of 2018, Energen continued to build on its track record of execution, growth, and financial strength," said James McManus, Energen's chairman and chief executive officer. "Wells completed with our Generation 3 frac design drove a 7 percent production beat to our guidance midpoint; and with three more months of outperformance and solid execution in hand, we are very pleased to be raising our estimated production targets for the remainder of 2018.

At the midpoint of our new guidance range for 2018, Energen will reach a milestone by producing more than 100,000 boe per day for the first time in company history," McManus added. "Our hedge program helps mitigate the negative impact of a temporary widening of basis differentials, and we have solid arrangements in place to provide flow assurance for our oil and gas production. These factors, together with the rigs and services we need in place, will allow us to continue focusing on execution as we implement our robust drilling and development plans.

In short, we are extremely pleased with our performance in the quarter and confident that Energen is well-positioned to continue delivering strong results and creating shareholder value.

26.     Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

27.     Despite the inadequate Merger Consideration, the Board has agreed to Proposed Transaction.   It is therefore imperative that Energen's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Background of the Merger**

28.     In May 2017, activist shareholder Corvex Management LP and its affiliates (collectively "Corvex") filed a Schedule 13D with the SEC stating its belief that the Company should conduct a review of strategic alternatives. Corvex has been in touch with Energen before and after this filing to discuss the same. In June, the Board held a meeting along with the

Financial Advisors and the Company's legal advisor to discuss the Company's strategic alternatives at that time. At the conclusion of this meeting, the Board decided to move forward with the Company's business plan.

29.     Corvex continued its pressure on the Company, and filed amendments to its Schedule 13D, and disclosing its intention to seek Board seats. In March 2018, the Board decided to expand the Board and nominated two members named by Corvex – Defendants Cohen and Intrieri. The Board also at this meeting determined that a strategic review would be beneficial to the Company and its shareholders.

30.     In June 2018, Energen's representatives contacted 16 companies to gauge interest in a business combination with the Company, and identified five as the most likely to be interested and/or capable of engaging in a compelling transaction. Three of the contacted companies executed non-disclosure agreements with the Company, including Diamondback. The other two companies are referred to as Company A and Company B.

31.     Company B elected not to move forward and Company A wished to wait until the second quarter results were released on August 7, 2018 to make a decision. Meanwhile, on August 1, Diamondback proposed to acquire the Company for $85 per share in an all-stock transaction, later increased to $87 on August 3, 2018. The next day, Energen and Diamondback executed an exclusivity agreement for a period expiring on August 15, 2018. Company A has indicated that it was not prepared to submit a compelling proposal at that time.

32.     On August 14, 2018, the companies executed the Merger Agreement.

C.     **The Materially Incomplete and Misleading Registration Statement**

33.     On September 13, 2018, Energen and Diamondback jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.   The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in

favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

34.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

35.     For the projections prepared by Diamondback for Energen, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDA, (2) operating cash flow, and (3) cash flow per share, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement 117.  Operating cash flow, cash flow per share, and EBITDA are non-GAAP measures as contemplated by Regulation G.

36.     For the projections prepared by Energen management for Energen, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as EBITDAX but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement 117.  EBITDAX is a non-GAAP measure as contemplated by Regulation G.

37.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

38.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

39.     Thus, to cure the Registration Statement the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on page 55, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

40.     With respect to Tudor's *Discounted Cash Flow Analyses* for Energen and Diamondback, the Registration Statement also fails to disclose: (i) the projected terminal values for the companies; (ii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 10.00%, (iii) the companies' estimated 2023 EBITDAX that was applied to arrive at the terminal values, and (iv) the companies' unlevered free cash flows, including the definition of the unlevered free cash flows and the line items used to calculate them. The Registration Statement explicitly states that Tudor performed the two *Discounted Cash Flow Analyses* "by calculating the estimated present value … of the standalone unlevered cash flows that Energen and Diamondback, in each case, were forecasted to generate." Registration Statement at 110.

41.     With respect to J.P. Morgan's *Net Asset Value Analysis* for Energen and Diamondback, the Registration Statement similarly fails to disclose the unlevered free cash flows that were used by J.P. Morgan to perform the analysis. Registration Statement at 101.

42.     With respect to J.P. Morgan's *Transaction Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each transaction selected by J.P. Morgan.

43.     With respect to the *Background of the Merger*, the Registration Statement fails to state whether the confidentiality agreements entered into with Company A, Company B, and Diamondback contained "don't-ask-don't-waive" ("DADW") provisions, and whether those restrictive provisions are still in effect or if they expired when the Proposed Transaction was announced.   Registration Statement at 73. The omission of the existence of the DADW

11

provisions renders the Registration Statement misleading because it creates a false impression that any of the eleven potential bidders could have made a superior offer for the Company.

44.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

47.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, amongst other

things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

49.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

50.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Energen within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Energen, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Energen, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Energen, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement

at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

55.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Registration Statement;

A.      Rescinding, to the extent already implemented, the Merger Agreement or any of

the terms thereof, or granting Plaintiff rescissory damages;

B.      Directing the Defendants to account to Plaintiff for all damages suffered as a

result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including

reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further equitable relief as this Court may deem just and

proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  October 22, 2018                          Respectfully submitted,

                                                                  */s/ Joe R. Whatley, Jr.*
Gloria Kui Melwani                                      Joe R. Whatley, Jr.
(To be admitted *Pro Hac Vice*)                W. Tucker Brown
**WOLF HALDENSTEIN ADLER**           WHATLEY KALLAS, LLP
**FREEMAN & HERZ LLP**                      2001 Park Place North
270 Madison Avenue                               1000 Park Place Tower
New York, New York 10016                      Birmingham, AL 35203
Tel: 212-545-4600                                    Tel:  (205) 488-1200
Fax: 212-686-0114                                    Fax:  (800) 922-4851
melwani@whafh.com                              Email: jwhatley@whatleykallas.com
                                                                      tbrown@whatleykallas.com


                                                         *Attorneys for Plaintiff*